Good morning. Before you have the 1st Division, 1st District, 2nd Division Appellate Court, the judges are as follows. Terry Lavin, Justice Aurelia Puchinsky, and myself, Justice James Fitzgerald Smith. Our case in this manner is People v. Henderson, 1-16-3288. The following order and procedures will be followed. First, the appellant will present their case with no interruptions given 10 or 12 minutes. Then the justices will ask their questions. Then the appellee will be given the same amount of time, 10 or 12 minutes, and then the justices will ask questions. And then when that is all done, the appellant will have his opportunity to close, and then we'll ask a few questions. Please introduce yourself and you may proceed. Hello, Your Honors. My name is Debra Pugh of the Office of the State Appellate Defender, and I represent the appellant Lance Henderson. My name is Assistant State's Attorney Noah Montague for the People. Thank you. Okay, Debra, you may proceed. Great, thank you. Don't do nothing crazy. Those were the words that the jury first heard from the State in closing argument. Those were the words that the State had intentionally elicited from Lance Henderson's girlfriend, April Graves, when she was on the stand at trial. The State asked April, did you say anything to Mr. Henderson when he dropped you off at your house? And she said, yes. I said, don't do nothing crazy. The State knew, of course, exactly what she would say when they asked that question, and they took that small bit of irrelevant testimony and expanded it so that it became the theme of their closing argument. They really hammered it home to the jury. It was the first thing the jury heard and the last thing the jury heard. The State began with, don't do nothing crazy. Then they repeated, don't do nothing crazy. Then they said, but Henderson didn't heed her advice. And then they asked, crazy or was it murder? So they're taking this information from April Graves, Henderson's girlfriend, presumably the person in the trial who knows him the best, who has intimate knowledge of him, and connecting what she said to the murder, implying that it proved that he was guilty of the murder. And then they circled back to it at the end of rebuttal argument saying, think about April's words. Don't do nothing crazy. What did he do? He went out and did just that. She knows who he is, and now, having heard all the evidence, you know who he is too. But the statement, don't do nothing crazy, doesn't show that he's the shooter. But the State made sure that that was foremost in the jury's mind when they went to deliberate. Now, on appeal, the State argues that that was a minor bit of testimony, irrelevant, not an important part of the case. But that's not the way the State saw it at trial. The State trial made it the centerpiece of its closing argument. But the State on appeal is correct in that it is irrelevant. This piece of testimony had nothing to do with Lance Henderson's guilt or innocence. It was an inflammatory statement that implied special intimate knowledge from the girlfriend that sort of suggested that the State used to directly suggest that Henderson had committed the murder. So the State agrees that it was irrelevant, but it was also extremely prejudicial because of April's intimacy with him, because the way the State used it so completely to really hammer it home to the jury that he did something crazy. April said, don't do nothing crazy, and that's exactly what he did. But it didn't prove that he was a shooter. It just gave the jury something very inflammatory and prejudicial to take with them into the jury room. Also very prejudicial was what the State argued in closing argument about the number given to the homicide victim by the morgue. No one denies that murder is a tragedy, but the question before the jury wasn't, is murder a tragedy? Should murder be punished? Is murder dehumanizing? The question was, was Lance Henderson the murderer? And by talking about Akhil Parthi, the homicide victim, being given the number 415 at the morgue was a way of inflaming the jury's passion by focusing on the dehumanizing nature of murder, and by also suggesting the scope of murder in Chicago. And the State referred to this again in the rebuttal when they were saying that the jury should send a message to Lance Henderson, tell him you can't commit crimes like this in Chicago. So the focus was on the scope of violence in Chicago and on the dehumanizing nature of murder, and not on Lance Henderson's guilt or innocence. These two things together were so prejudicial, and they inflamed the jury, because then the jury went back to the jury room with this notion of violent crime in Chicago and the idea of don't do nothing crazy. And so these things were both highly prejudicial. Now the State focuses on the case Green, which was a case decided in 2017, where they found that argument talking about the number given to the victim in the morgue was appropriate argument and it was not prejudicial. Now Green is different from this case in that there, there was no discussion about the larger role of violence in Chicago, but also to the degree that it can't be distinguished, Green was wrongly decided, because it really is, there's just an inflammatory argument that has nothing to do with guilt or innocence. Now, notably, Green has been around for a little bit and 35 different cases have relied on Green for various points of law, but not one single case has relied on Green for this. So while Green is out there, it is not the last word on this issue, which is obviously a somewhat unusual issue, but it's not as though Green is standing as the law in Illinois in this case. Now these two issues together are not harmless. The primary evidence against Henderson in this and it's well known now that eyewitness identification is a cause of more wrongful convictions than any other sources combined. And so here, there were four people who were present at the shooting who testified at trial. Two of those people had never seen Henderson before and what two of those people had seen Henderson earlier in that day during his altercation with April when they interceded. The people who had never seen Henderson before couldn't identify the shooter. They said he had a hat pulled down low over his face, it was dark, they couldn't see his face. So the only people who connected Henderson to the shooting were the people who had seen him earlier. But Jeffrey Loftus testified in this case to the ways in which eyewitness identification can be unreliable. And so these include the stress of the event, the darkness, the way the shooter concealed his face with his hat, any post-event information that they received, but also there's the matter of expectation that they expected. If there was going to be some violence like this happening, they expected that it would be Lance Henderson based on the previous incident with April. So there's a shooting, but there's the identification by these two people at the shooting, but that's it. There's no confession, there's no physical evidence. And then also there's the matter of what the shooter was wearing. At the shooting, he was wearing a black hat pulled down. Now Lance Henderson was wearing a white hat during the and then when he was arrested, there was nothing to connect what he was wearing there to what the shooter was wearing. So we have what Lance Henderson was wearing before the shooting, what Lance Henderson was wearing on his arrest, but there's nothing to connect it to what the shooter was actually wearing. So it really is just these two people giving this testimony that it was Lance Henderson, but they expected to see Lance Henderson. So for all of these reasons, the state cannot prove beyond a reasonable doubt that those errors were harmless. The state repeatedly focused on at trial, the state focused on the idea of don't do the dehumanizing nature of murder, crime in Chicago, but all of these things were irrelevant and inflammatory and the state cannot prove beyond a reasonable doubt that they did not affect the jury's verdict against Henderson. As to grave statement, you didn't say anything about forfeiture and you didn't, aren't at the point you never raised in the briefs or anywhere plain error. So it's almost as though you're raising things that shouldn't be raised. But even if we waive and allow you to come under plain error or an exception to it, which doesn't appear this is, those statements, it just reminded me while you were talking of say my daughter sees her boyfriend after an argument and says, you better wear a mask if you're going back to that party. And then he runs out and has a major fight with somebody. It's to me, it was no different that statement than the statement made here. It has no real relevance and it doesn't affect the outcome of what occurred, which is grievous compared to what you're raising. And the second point as to the 415, as you said, the green case, but it is the law and it's common knowledge that that's how they do call these cases because I've been there and you can say what you want. Okay. Let me, let me take these in turn. First as to forfeiture, we maintain that this issue is not forfeited because at the hearing on the motion for the new trial, but now this is only the issue about April Graves because the 415 was clearly, was clearly preserved. Now the issue that the state raised in their brief was about whether or not the statement that April Graves made was preserved. Now, as we know, defense counsel objected on the hearsay grounds at trial, but then at the hearing on the motion to, for a new trial, counsel brought up the issue of relevancy. Now the state talking about forfeiture brings up the Illinois Supreme court's people, the Enoch from 1988. Now that case actually says that when the prosecution, when defense counsel raises a new issue at the hearing on a motion for a new trial, if the prosecution doesn't object, quote defense counsel may quote avail himself of any ground for a new trial, which might appear in the record, which is to say the state can waive waiver. And that's what happened here. Defense counsel is bringing up the issue of relevance and the state didn't object. They could have objected and they didn't. And the court didn't, the court didn't say, well, you didn't bring this up before the court ruled on it. The court said this. Well, I mean, let me talk briefly to about what defense counsel actually said. Counsel said what April Graves said to Lance Henderson, what is the relevance of that? The statement was not irrelevant. Then the court and ruling on it said it's not hearsay, but it's not necessarily something that should have been admitted. So if the court saying it's not hearsay, but it also maybe shouldn't have been admitted. Clearly the court's thinking about the relevancy issue because that was the only other issue before the court was the statement shouldn't come in because it's hearsay and the statement shouldn't come in because it's irrelevant. And so the court did rule on this. So based on Enoch, this is saying that defense counsel, the state had its to object and say that that defense counsel had waived it by not bringing it up specifically at trial, but the state didn't object at the hearing on the motion for a new trial. So in that regard, it is not, it is not waived and it's not forfeited. And additionally, forfeiture is a limitation on the parties, but not on this court. So this court can rule on any, on any issue that's raised regardless of whether or not it considers it to be forfeited. But, but again, because of, because of the way it was raised in the hearing on the motion for a new trial, the fact that the state didn't object and the fact that the court didn't say, no, this is not before me because I didn't, you didn't bring it up at trial. Everybody treated this as an issue that was worth arguing at that moment and being ruled on. So it really was ruled on at the hearing on the motion for a new trial. And so in that regard, it was not forfeited. Onto the issue, Justice, about, about comparing the idea of your daughter and telling her boyfriend to wear a mask to a party. Now that's different in the sense that here we have, now I agree that had the state not said anything in closing argument about what April Graves said, it would have just sort of hung in the air as a sort of irrelevant bit of testimony that often comes out at trial, but it's what the state did with it then by making it that they increased the prejudice of it. They took this something that was irrelevant, could be prejudicial, could be neutral, like the mask, but then they connected it completely to the murder. So, I mean, in the case of, if it were the boyfriend in the mask, these are two, if the boyfriend were to get into trouble, into a fight and had nothing to do with the mask, and then that would never come up again at a trial. Whereas here saying, was it crazy or was it murder? She knows what he did. He did a crazy thing. He didn't heed her advice. The state connected it directly. They made what April said, this irrelevant bit of testimony into a matter of proof saying this girlfriend who knows him, who thinks that he might do something crazy, she was right. He did this crazy thing. So there's a direct connection between that bit of testimony, which could have been irrelevant, but the way the state hammered on it, they made it relevant and they made it prejudicial. And they, I mean, they made it, they improperly made it relevant because it never was relevant. Well, but what about the evidence of what the defendant allegedly was doing before she made that statement? I mean, he's involved in physical, there's testimonies involved in the physical altercation with her, hitting her in front of a child, that the child's out in the street and that he tells these guys that he'd be back. There's specific testimony from three of the individuals that testified that defendant said he would be back. Now you talk about doing something crazy. He already did it because he was beating up his girlfriend in front of the kid. And you know, for the state to use this as part of their argument to me, and I tried plenty of cases, is using evidence as a bit of a rhetorical flourish and trying to put, you know, this into some context. And the context here was that the guy already did something crazy and he did it in front of a child. That's the evidence in this case. So I don't know how that is harmful. Excuse me, I don't know how it's prejudicial. It may be harmful, but it's harmful because of what the defendant is alleged to have done and what the witnesses said they saw him do and they heard him say. Well, I'm going to say I'm not here arguing that Lance Henderson is a criminal. That's not an issue here. Believe me, there's no question that what happened previously with April and with a child, that's not an issue here. And I'm not making any excuses. What do you mean it's not an issue? Oh no, I mean it's not an issue on appeal in the sense that I'm not saying that it didn't happen. No, I'm saying that that's the fact. But there's a level of craziness. There's a craziness involved in a domestic dispute, which is a terrible thing. But that's different in terms of magnitude from a shooting that left one person dead and two people shot. And so she was saying, don't go out and do something even more crazy than what already happened. She knew him better than anybody else who was out on the corner that day, that's for sure. Well, that's why it was so harmful because she was saying it was this irrelevant evidence that didn't show that he was the one who committed murder, but it did say that that's what she thought. And then sort of imputing that knowledge to the jury saying, now you know him too, the way his girlfriend knows him. And so this is where the prejudice comes from. I'm not a buyer. Okay, even if we said, oh, that shouldn't have come in, you still got two witnesses that are very solid witnesses. Two of them, Powell and Hardiman, approached the man in the car during the fight, tried to calm things down. So they saw him, they were face to face with him, they testified they saw his face and they heard him say, I'll be back. And they were within four feet of him when he came back. So those are two solid witnesses. Those are not dubious eyewitnesses. Those are solid eyewitnesses. So even if we said, oh, well, her statement shouldn't have been in, the result is not going to change. Well, I mean, that's the issue is that how reliable were those witnesses? Because we had Jeffrey Loftus testifying here to the ways in which even witnesses who've seen a person before, I mean, which is what, I mean, I didn't bring up Lerma in the case, and I'd be happy to do further briefing on it. But in Lerma, the people via Lerma from the Illinois Supreme Court case involving eyewitness testimony from 2012, that was also involving someone who'd been seen before. And that can still result in an unreliable identification. I mean, I think we've all had the experience of seeing someone that we think we especially because they expected to see him exactly as was discussed earlier. He said, I'll be back. Now that piece of evidence cuts both ways. Of course, it's a negative piece of evidence for him. But it also suggests that that's what the two witnesses who had seen him previously were expecting. If somebody is coming along and shooting, they're going to think, well, of course, it's this guy Henderson, because he had said that. Even though it might not have been him based on the other two people who couldn't identify him and the lack of other evidence that would connect him to the crime. Well, the people who were shot hadn't seen him up close and personal at the car. Right. And they're being shot. But Powell and Hardeman, they just saw him approaching. And Hardeman said he was within four feet of him. Right. But it was also, it had all these recognize him as the same guy. But it was also dark and the hat was down low. And so it's just that Hardeman didn't say his hat was down low. Well, the other witnesses said that his hat was down low, the ones who couldn't recognize him. Maybe from their angle while they're being shot. That's what they saw. But Hardeman never said that. And I don't believe that Powell ever said that. No, I don't think either of them said that either. But the issue is whether or not the state can still prove whether the state could prove that the issue is harmless beyond a reasonable doubt. And we maintain that because of the difficulties of finding reliable eyewitness testimony, that because of the prejudicial nature of the statement, don't do nothing crazy, the way it was used. And also the 415 number in the morgue, that for these reasons, this court should reverse Lance Henderson's conviction and remand his cause for new trial. You know, I've been thinking about this eyewitness testimony issue as all of these times of unrest have been going on. And this is not a situation where somebody's wearing a mask. Okay. And they say that they can recognize him and there could be some difficulties with that. This is so far away. If we were to rule that the eyewitness testimony here is unreliable on the basis of this record, we'd be laughed at. Okay. I mean, we'd be laughed at. It's not even close. The issue is just because the jury was given this prejudicial information to go back to the jury room. And maybe what the state has to prove beyond, it's not saying, we're not trying to argue that it was an evidentiary error to let them testify because it was unreliable. That would be a different standard. And so it's not really saying that they're unreliable in the sense of not allowing them to testify, which would be a much higher standard. The standard here is that the state has to prove beyond a reasonable doubt that no matter what the evidence, what the result of the trial would have been the same. And so again, for those, I asked this court to remand for a new trial, to reverse Lance Henderson's conviction and remand for a new trial. If the I'm good. Thank you. Thank you. Noah, you can proceed now. Thank you. May it please the court assistant state's attorney, Noah Montague on behalf of the people in this matter. Your honors, this matter comes before the court as the court knows a shooting that happened on the West side of Chicago in 2012 that left one person dead and two people severely injured. Uh, the shooting had two eyewitnesses, uh, who saw the defendant and recognized them as someone they had seen in an altercation from 90 minutes before, uh, the, the altercation happened on the same corner, the same, uh, part of town, the same location, which was directly under a streetlight defendant and his girlfriend got into a physical altercation. Uh, the girlfriend asked the, the young men across the street to call the police. They called the police and then they tried to intervene and cool down the situation. Defendant became angry that they intervened and promised them that he would be come back or leaving. 90 minutes later, defendant came back wearing a different hat. He walked up within four feet of one of the eyewitnesses and open fire. He did not hit that eyewitness. He hit three other people. And as I said, he killed one and was within 12 feet of him, uh, at the time of the shooting. And both of them testified that they recognized the defendant when he came back as the same person they had seen before. Um, the witnesses also got, uh, the license plate number from the first, uh, incident and the license plate number, which was off by one digit, but it was able to be used by the police to track down the, uh, defendant. The two other people who witnessed the shooting and testified, they also gave a description of the defendant, which vaguely, uh, fit the, uh, defendant, but as a council stated, they weren't able to identify him. Uh, the girlfriend testified and corroborated the, uh, altercation, uh, testimony and, uh, the physical evidence also corroborated the, that there was only one gun. Uh, as to the first issue, uh, don't do nothing crazy. The statement, um, one thing that the people want to make clear in this is a little bit muddled. And, uh, I just want to make sure that it's clear is that the issue is whether or not the statement, the testimony came in, uh, incorrectly, uh, because there's a lot of argument and council has now argued that, uh, the testimony itself may have just been forgettable. If not for the state's argument, but the state's argument is not actually the issue here. There's no actual issue raised as far as the state can tell with the state's argument that the state's argument itself was improper. Uh, and the reason the state wants to bring that up is one, to be what we're talking about. And two, there was no objection to the argument. So all those times in the state's argument where, where the state mentioned, don't do nothing crazy, that statement, there was never a single objection. And at the motion for new trial, it was never argued, uh, that the state's argument on that point was improper. So if there is any issue with the state's argument as to this particular piece of testimony, the state maintains that that is forfeited and has not been brought up, uh, as plain error on appeal. And so under people versus Hillier, the Illinois Supreme court case, it would be forfeited. And, uh, the state maintains as well that this issue of the girlfriend's statement, don't do nothing crazy. This, that the defense has forfeited this as well. They, they raised, they objected on the specific issue of hearsay and the objection, uh, on one grounds waves, all other grounds. Now the defendant is saying, uh, that they got into a discussion on during the motion for new trial on the relevance of the evidence. However, if you look at the, the quotation from page four of the defendant's reply brief, the quotation that they use to make this argument that quote positively goes to the relevance and quote, if something positively goes to the relevance of something else, that means it's probative. So at least from what the state has seen in the reply brief, the, the argument does not appear to be calling the evidence prejudicial, at least not the quote, uh, uh, that was used in the reply brief. I realized council used a different quote, or at least a quote that the state hadn't seen, uh, during her argument. Um, but anyway, the state maintains that the, uh, defendant has forfeited this and under people versus Hillier, uh, has forfeited the argument because they did not raise plain air, uh, in their opening brief. And regardless, uh, even if this court were to review, um, the issue, the state maintains that the testimony was properly introduced. Uh, and the one thing the state would really point out is that under rule four Oh three, it doesn't have to be more probative than prejudicial to come in. What four Oh three says is it should be kept out if the unfair prejudice, not just prejudice, but unfair prejudice substantially outweighs the probative value. So it's not just saying, Hey, this has to be a better than 50 50 split probative and prejudicial. There has to be unfair prejudice. And that unfair prejudice has to be substantially outweighed or has to substantially outweigh the probative value. And as council pointed out in her argument, this was a pretty forgettable piece of evidence. If not for the state's argument, it would have just flown by the wayside. No one would have thought twice about it. And that's how you judge the evidence is whether or not it's admissible is when it comes out on the stand, not looking forward to say, Well, hey, how is the state going to use this in their argument? Maybe it shouldn't have been admissible once we see how it plays it out. It's the statement at the time that single piece of evidence by itself. And that's why the state has made the argument that this was relatively innocuous piece of evidence. It was just a girlfriend, someone that cared about the defendant, giving him a warning. It wasn't admitted for the truth of the matter asserted. It was just a statement of someone who cared about him trying to give him a piece of advice. And it simply went to the credibility of the threats that the defendant had made. And so it did have limited relevance. But the state is not arguing or admitting in any way that it was irrelevant, just that we're just simply arguing that the probative value was limited. It was a pretty limited piece of evidence, but it was still something that had at least some probative value. Also, the state would argue that even if this court does review this piece of evidence that if it was properly preserved, then it was harmless because the evidence in this case was so strong. This was an identification case. And in that identification case, you had two people who saw this defendant 90 minutes before the shooting. They saw him up close and personal, right under a streetlight for multiple minutes during a confrontation. They had interactions with him. And then they saw him when he came back and they recognized him. And they saw him from four feet away and from 12 feet away. And they recognized him immediately. They told the police that night that they recognized him. And then they did a lineup that same day. The same day as the shooting, they did a lineup and identified this defendant. So this is a rock solid identification case. And any error in the admission of this testimony is harmless. As to the state's argument on the identification number from the medical examiners, the state maintains this was a proper argument. It was properly admitted into evidence that defendants shot Akeel Partee and that Akeel Partee was subjected to an autopsy, at which point he was given this identification number. There was no objection to any of this evidence coming in. Once the evidence is in, the state is free to point out that in People v. Green, the state there didn't just argue the identification number. They said the identification number and then they said another dead body in the city of Chicago. But the first district, I don't remember what division it was, but found that this was still proper because it was just a fact and evidence. And it was not calling out upon the violence in the city or the number of murders in the city, the murder rate or anything of the sort. And the same is true here. It's important to note that the defendant is trying to make the same argument they made in Green, but the only statement where the state here mentions the city of Chicago was at the very end of rebuttal. But the state's mention of 4-15-July-2012 was in opening quotes. If you look at the citations, one's on page, I think, 163 and the other's on page 193. They're 30 pages apart. These are two completely isolated statements. So this was not a running thing. This is not a recurring thing, and there's no connection between those two statements. So we'd ask that this court follow Green and find that the statement was proper. But again, as stated above in the last portion, any error would be harmless due to the strength of the evidence in this case. So for those reasons and the reasons stated in the People's Brief, we'd ask that you affirm the defendant's conviction here. And if there are any questions, the state can take them now. Questions? No questions from me. None from me. So Deborah, you get to respond. Good. Sorry about that. I forgot I was muted. Just a very brief response. Because most of this was covered in the opening argument. But about council brings up the issue of what exactly the argument is here. And because the argument was, which I didn't write the opening brief, and so I don't, so I'm not exactly sure of the reasoning there. But that the argument was that the objection was to the statement coming in at trial, and that the argument at that the state's closing argument exacerbated the prejudice. So what could have been a non-problematic bit of testimony that was that was irrelevant, possibly prejudicial, possibly neutral, was made worse by the argument itself. But the issue was that the state intentionally elicited this bit of testimony from April Graves. And so they asked her this knowing what she would say, knowing that they would use it in closing argument that way. But the evidentiary error and the error on the state is from asking the question about trying to draw out the testimony, don't do nothing crazy. And so I agree that it's slightly confusing the way it's stated in the brief. And so I just wanted to clarify that. And that, whereas with 4.415, it's specifically about the argument. And so that was that was preserved there. As for whether it's substantially the prejudice of the statement, don't do nothing, don't do nothing crazy. If the prejudice was it was extreme here because of the way it was used at trial. And, and so and it really wasn't probative of anything, it had zero probative value whatsoever. And then going into the forfeiture argument, where counsel said that it absolutely went or that positively went to relevance. What he meant was that was based on the general, the general tone of the argument altogether, where he was talking about what is the relevance of that the statement was not relevant, and saying it absolutely positively goes to the relevance, meaning that it was irrelevant, that the state would use it or that the jury would use it as relevant evidence, but it wasn't relevant evidence. And so this was what was discussed at the motion for a new trial. And so it's all in the record that, that he's saying altogether that it absolutely positively goes to the relevance, meaning that it is irrelevant, and that what's the relevance of that, and it's not relevant, in fact, constitutes hearsay. As for all the other issues, we've discussed them in the opening argument. And these are just these were these harmful bits of testimony, bits of evidence that were used to inflame the jury's passion that had nothing to do with Lance Henderson's guilt or innocence, but that the jury was encouraged to use and did use in finding him guilty. And yes, there was this eyewitness testimony, but we all know how unreliable eyewitness testimony can be, and that it's not for nothing that it's considered to be the most unreliable form of evidence against the defendant because of the ways it can go so wrong. There are so many different, there are so many wrongful convictions that have resulted from unreliable eyewitness testimony. And so that is just something that encouraging this court to consider when ruling upon this case, the ways in which Illinois has been so damaged by eyewitness testimony leading to wrongful convictions. It's just something that sort of sits in one's head in thinking about a case and how to approach a case when it's primarily based on eyewitness testimony. So for all of these reasons, we would ask this court to overturn Lance Henderson's conviction and to remand his case for a new trial. Thank you. Thank you. Any questions? None. Great job by both parties. Terrific argument, really. You're both to be commended. Yeah, the briefs were done well, and you both argued quite interestingly well. As a matter of fact, of the three cases we heard today, I'd say the two of you were the best of the six attorneys before us this morning. And Deborah, don't feel bad if we kind of beat on you. And it's interesting that the case wasn't originally yours. So you did a nice job of hanging in there. Not that Noah didn't, but he didn't get beat up like you. Exactly. That's what I was going to say. Well, but your predecessor, Heidi Lambros, is plenty capable. So exactly. No, no disrespect to Heidi. Exactly. Thank you so much. Thank you. We'll let you know within a couple of weeks. Okay, great. Thank you. All right.